**Allan TORREGROSSA et al., Petitioners,**

v.

**Dennis SZELC, Respondent.**

**No. B-9378.**

Supreme Court of Texas.

July 16, 1980.

Donisi & Lang, Howard A. Lang, Jr., Houston, for petitioners.

Lennon C. Robinson, Houston, for respondent.

BARROW, Justice.

Respondent, Dennis Szelc, brought this suit against H.E.D. Sales, Inc. and Allan Torregrossa, for breach of implied warranty of title of a used car he purchased from H.E.D. Sales, Inc. Judgment was rendered after a jury trial whereby Szelc recovered his actual damages from both defendants, jointly and severally. The court of civil appeals affirmed. 596 S.W.2d 299. Torregrossa is our petitioner.

The primary question before us is whether there is any evidence to support the jury finding that H.E.D. Sales, Inc. was the alter ego of Torregrossa so as to make him personally liable for the judgment. We hold that there is not and reverse the judgments of the lower courts as to Torregrossa and render judgment that Szelc recover nothing from him. We affirm the judgment against H.E.D. Sales, Inc. and its successors.

It is undisputed that Szelc purchased the car in question from H.E.D. Sales, Inc. on August 7, 1975. His check was made payable to H.E.D. Sales, Inc. and the bill of sale was in the name of the corporation. Szelc's trial pleadings did not raise the question of alter ego or seek to disregard the corporate fiction and there was little development of this theory during the trial. However, the trial court, over Torregrossa's objection, permitted Szelc to urge this issue by a trial amendment and the jury found that H.E.D. Sales, Inc. was the alter ego of Torregrossa.

It was established by the uncontroverted record that H.E.D. Sales, Inc. was organized as a business corporation under the laws of Texas in January 1975. The initial capitalization was $1,000 with 1,000 shares of stock being issued at a par value of $1.00 each. Torregrossa owned 500 of these shares and Harold E. Draughon owned the remaining 500 shares. The third incorporator was James A. Hazlitt, an attorney. The officers were: Harold E. Draughon, President; and Allan Torregrossa, Vice President and Secretary. The corporate charter was forfeited by the State Comptroller on October 8, 1976 and by the Secretary of State on March 21, 1977 for non-payment of the corporate franchise tax.

The basic rule set forth in *Pace Corporation v. Jackson*, 155 Tex. 179, 284 S.W.2d 340 (1955), and reaffirmed by this Court in *Drye v. Eagle Rock Ranch, Inc.*, 364 S.W.2d 196 (Tex.1962), and in *Bell Oil & Gas Co. v. Allied Chemical Corp.*, 431 S.W.2d 336 (Tex. 1968), is as follows:

> " 'Courts will not disregard the corporation fiction and hold individual officers, directors or stockholders liable on the obligations of a corporation except where it appears that the individuals are using the corporate entity as a sham to perpetrate a fraud, to avoid personal liability, avoid the effect of a statute, or in a few other exceptional situations.' "

Clearly, there was no evidence of a sham corporate structure here. Szelc testified that the sales lot where he purchased the car was identified by a sign showing that it was operated by H.E.D. Sales, Inc. Szelc knowingly made the deal with the corporation. *See Atomic Fuel Extraction Corporation v. Slick's Estate*, 386 S.W.2d 180 (Tex. Civ.App.—San Antonio 1964), *writ ref'd n. r. e. per curiam*, 403 S.W.2d 784 (Tex.1965). The jury found that Szelc knew or should have known that he was purchasing the car from H.E.D. Sales, Inc. Although Torregrossa occupied an office on the property and was apparently in a position of some authority, there was nothing to indicate that he personally was the owner of the business. All the papers in this transaction were prepared in the name of the corporation.

Szelc would have us hold that the corporation was a sham because there is little evidence corporate formalities were followed. However, there is no direct evidence that such formalities were not followed. As plaintiff, he would have the burden of proof on the issue of alter ego. Although Torregrossa's recollection was poor as to the specific details of the corporate structure, it was not shown that they were not carried out. The corporation maintained its own bank accounts. No one testified that there were no board of director meetings or no corporate minutes. It is apparent that with but two stockholders, the corporate meetings would be very informal. This evidence does not support a finding that the corporation is the alter ego of Torregrossa. He was not shown to dominate the corporation in any way. He owned only fifty per cent of the stock. The other stockholder took an active part in the business.

The court of civil appeals reasoned that the small capitalization of the corporation supported the jury finding that the corporation was the alter ego of Torregrossa so as to justify piercing the corporate veil. It is true that the corporation was capitalized for the minimum statutory authorization of $1,000. However, there is no showing that this was an unfair device designed to achieve an inequitable result. *See Associates Development Corp. v. Air Control Prod., Inc.*, 392 S.W.2d 542 (Tex.Civ.App.—Austin 1965, writ ref'd n. r. e.). In fact, there is no showing that this corporation was under capitalized. It was not shown that there are any unpaid creditors. There was no evidence as to what assets were on hand at the time the charter was forfeited; much less what happened to them. The only evidence regarding its financial structure is that Torregrossa earned from $3,000 to $4,000 a month from the corporation.

The court of civil appeals cited *Tigrett v. Pointer*, 580 S.W.2d 375 (Tex.Civ.App.—Dallas 1978, writ ref'd n. r. e.), in support of its holding that insufficient capitalization is

a sufficient ground to pierce the corporate veil. This case does not support such a holding in that it was there said that "[i]nadequate capitalization by itself may not be a sufficient ground to pierce the corporate veil." The court did recognize that "grossly inadequate capitalization" is an important factor in determining whether personal liability should be imposed. However, in *Tigrett* the inadequate capitalization came about through a fraudulent scheme on the part of the major stockholder to acquire virtually all of the corporate assets to repay advances he had made. This was done to the detriment of other creditors. This manipulation of the corporate form of business organization to serve the major stockholder's personal interest is clearly the type of fraudulent scheme envisioned by this Court in *Pace Corporation v. Jackson, supra.* There is no evidence of such manipulation in the record before us.

We hold that there is no evidence in the record before us that H.E.D. Sales, Inc. was the alter ego of Allan Torregrossa. The courts below erred in rendering a personal judgment against him on this theory.

We reverse the judgments of the courts below which granted Szelc judgment against Allan Torregrossa and render judgment that Szelc take nothing against him by this suit. We affirm the judgment as to H.E.D. Sales, Inc. and its successors.