Eldore URBAN, Appellant,

v.

FIRST STATE BANK OF GRANGER, Appellee.

No. 13202.

Court of Civil Appeals of Texas, Austin.

Dec. 3, 1980.

Rehearing Denied Jan. 7, 1981.

Jerry Nugent, Rinehart & Nugent, Austin, for appellant.

Thomas A. Forbes, Grant, Stone & Forbes, Austin, for appellee.

PHILLIPS, Chief Justice.

This case involves the question of whether certain liabilities incurred by appellant at appellee bank were those of a corporation or of appellant personally acting in his own behalf.

The trial court rendered judgment against appellant personally. We reverse the judgment of the trial court and render judgment as hereinafter indicated.

On July 8, 1975, appellant signed a promissory note to appellee bank for $12,700.00 in the following manner: "Borrower P.S. O.S. dba Printing Service by Eldore D. Urban, Pres." After default on the note, the bank brought suit for the balance owing, $3,225.48, against the corporation, P.S.O.S., Inc., and appellant individually. The court found as fact, and this finding has not been challenged on appeal, that the note sued upon was executed by appellant in his capacity as president of P.S.O.S., Inc.

It is undisputed that appellant did not have a prior *written* resolution from the board of directors of P.S.O.S., Inc., to borrow the funds from the bank and execute the note, and that the bylaws of the corporation required a prior board resolution or authority. The testimony reveals that appellant discussed the matter orally with the other members of the board of directors and received verbal authorization to make the loan.

There is also evidence that the proceeds from the loan were used for corporate purposes and that the directors were aware of this fact. There were three repayments made on the loan by checks written on the corporate bank account.

It is also undisputed that P.S.O.S., Inc., was a Texas corporation in good standing at all times material hereto. P.S.O.S., Inc., was being managed by a board of directors, had frequent meetings that decided policies and had enacted bylaws.

In a separate transaction appellant signed a note individually doing business as Mailing Service of Austin. Appellant pledged a mailing machine and equipment for collateral on that loan. On October 1, 1976, appellee bank made demand upon appellant for payment of that note. Thereafter, the mailing machine was sold and the appellee bank received $8,000.00 on the sale of the collateral. The bank took $5,281.74 of the $8,000.00 and applied it to appellant's individual mailing service obligation, then applied the remaining $2,718.26 to the corporate P.S.O.S., Inc., note.

Appellant, individually as Mailing Service of Austin, maintained a checking account with the appellee bank. On May 26, 1977, shortly after the sale of the mailing machine, appellee bank closed out appellant's checking account by taking the balance of $136.89 and allocating it to a repossession charge.

On the basis of these facts, the court found that appellant and P.S.O.S., Inc., are one and the same entity, and that P.S.O.S., Inc., is the *alter ego* of appellant and that P.S.O.S., Inc., acted solely as a conduit for the performance of the appellant's individual business.

The court then awarded judgment against P.S.O.S., Inc., and appellant jointly and severally for the amount due and owing under the P.S.O.S., Inc., note, $3,225.48 with interest from the day of default for attorney's fees and costs.

The court's judgment denied appellant's counterclaim for the $2,718.26 mailing machine balance that the appellee bank applied to the corporate note by concluding that appellee bank had the right to apply these excess proceeds from the mailing machine sale to the corporate note and for the $136.89 charge described above.

Appellant's points of error raise two principal questions: one, did appellant have the authority to act for the corporation; and two, was the corporation the *alter ego* of appellant and whether the corporation acted solely as a conduit for the performance of appellant's individual business.

■ In answer to the first question, we hold that appellant had the authority to act for the corporation. The evidence is uncontroverted that appellant was authorized by parol authority. The bylaws require a board of directors' resolution but they do not require a written resolution. The evidence establishes the fact that appellant met with the members of the board of directors, discussed the loan, and received the oral authorization of the Board. *Texas & N.O.R. Co. v. Burden*, 146 Tex. 109, 203 S.W.2d 522, 529 (1947); *Ross v. Sher*, 483 S.W.2d 297, 299 (Tex.Civ.App.—1972, writ ref'd n.r.e.).

■ With respect to the second question for determination, we hold that there is no evidence that the corporation was the *alter ego* of appellant and that the corporation acted solely as a conduit for the performance of appellant's individual business.

In *Drye v. Eagle Rock Ranch, Inc.*, 364 S.W.2d 196, 202 (Tex.1962), it was said that a court "will not disregard the corporate fiction and hold individual officers, directors and stockholders liable on the obligations of a corporation except where it

appears that the individuals are using the corporate entity as a sham to perpetuate fraud, to avoid personal liability, avoid the effect of a statute, or in a few other exceptional situations." This doctrine was recently restated in *Torregrossa v. Szelc*, 603 S.W.2d 803 (Tex.1980).

The record discloses that P.S.O.S., Inc., was incorporated and doing business since January, 1972. There were three directors and the company was run by the Board. The note of July 8, 1975, described the "Borrower" as "P.S.O.S. dba Printing Service by Eldore D. Urban, Pres."

The record further discloses that the directors of P.S.O.S., Inc., had frequent board meetings, kept minutes and authorized appellant to execute the note and borrow the money in question. Appellant further testified that the bank was well aware of the corporation and knew that the corporation was borrowing the money.

We find no evidence that appellant was using the corporate entity as a sham to perpetuate fraud or to avoid personal liability. This is so even though appellant had borrowed money from appellee bank for a separate venture entirely apart from any business of the corporation at another time.

Nevertheless, we conclude, and the evidence discloses, that P.S.O.S., Inc., was a corporation and was acting in that capacity in making the loan in question.

Consequently, we must reverse the judgment of the trial court and render judgment that appellee take nothing by its appeal. We also render judgment that appellant recover of the appellee bank the sum of $2,855.15 with interest from the dates these sums were appropriated by the bank.

Reversed and Rendered.